IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **3D SURFACES, LLC**<br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**DELL TECHNOLOGIES INC. and DELL INC.**<br>　　　　**Defendants.** | 6:21-cv-01107-ADA |

**MEMORANDUM OPINION AND ORDER**

Came on for consideration this date are two motions.

First is Plaintiff's Motion to Strike New Evidence and Argument Raised in Reply Briefing, filed June 8, 2022. ECF No. 64. Defendants Dell Technologies Inc. and Dell Inc. (collectively, "Dell") filed an opposition on June 15, 2022, ECF No. 68, to which Plaintiff 3D Surfaces, LLC ("3D") replied on June 22, 2022, ECF No. 73. After careful consideration of the motion, the Parties' briefs, and the applicable law, the Court **DENIES** Plaintiff's Motion to Strike New Evidence and Argument Raised in Reply Briefing.

Second is Dell's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Austin Division of the Western District of Texas filed on February 8, 2022. ECF No. 33 (the "Motion"). 3D filed an opposition May 20, 2022, ECF No. 55, to which Dell replied on June 3, 2022, ECF No. 60. After careful consideration of the Motion, the parties' briefs, and the applicable law, the Court **GRANTS** Dell's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

**I. BACKGROUND**

On October 25, 2021, 3D filed a complaint against Dell, accusing it of infringing U.S. Patent Nos. 7,245,299 and RE42,534 (collectively, the "Asserted Patents"). ECF No. 1. 3D is a California Corporation with its principal place of business in Cupertino, California. ECF No. 1 ¶

1

2. Both defendants are Delaware corporations with their principal places of business in Round Rock, Texas. ECF No. 1 ¶¶ 3, 4.

The Asserted Patents concern, in 3D's words, "graphics processing of three-dimensional images." ECF No. 44 at 1. 3D alleges that the "Accused Products" include "laptops (e.g., Latitude, Vostro, Inspiron, XPS, GSeries, Rugged, Chromebook Enterprise, Education, and Alienware), tablets and 2-in-1s (e.g., XPS, Latitude, Inspiron, Rugged, Chromebook Enterprise, and Education) and desktops (e.g., Alienware, OptiPlex and OptiPlex Ultra)." ECF No. 1 ¶ 14. 3D's allegations focus on the processors in these Accused Product that include graphics processing units (GPUs) supporting DirectX 11.1 and higher. ECF No. 1 ¶¶ 17, 41.

## II. LEGAL STANDARD

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)).

The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant

3

need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III. ANALYSIS

### A.     Motion to Strike

3D asserted a theory in its opposition brief that characterized Waco-based Dell personnel as having relevant knowledge. It identified ▓▓▓▓▓▓▓▓, a Dell marketing manager, and ▓▓▓▓▓▓, a Dell account executive. ECF No. 55 at 3–4. It also identified Dell employees as being relevant merely because they were described as having roles similar to ▓▓▓▓▓▓. ECF No. 55 at 4 (naming ▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓). It further listed twenty-five other potential Dell witnesses, arguing that they are relevant merely because they are in the same business unit as ▓▓▓▓▓▓. *Id.* at 5. Dell has unwaveringly rejected the theory that Messrs. ▓▓▓▓▓▓, and their affiliates have any relevant knowledge to this Action but nevertheless identified in reply sixty-three Austin-based Dell personnel affiliated with Messrs. ▓▓▓▓▓▓▓▓ in the event the Court determined Messrs. ▓▓▓▓▓▓, and their affiliates *do* have relevant knowledge.

3D now asks that the Court strike any reference in Dell's reply to those sixty-three witnesses. The Court will not do so, finding that it effects little prejudice on 3D at least because: Dell's revelation of these witnesses should not have come as a surprise to 3D; and these sixty-three witnesses, and the comparable Waco-based witnesses 3D relies on, are of such vanishingly small relevance, if any, that they do not affect the outcome of Dell's Motion to transfer.

As to that first point, 3D cannot assert a theory in its responsive brief that characterizes Waco-based Dell personnel as relevant based only on their affiliation to ▓▓▓▓▓▓ and then cry foul when Dell likewise identifies Austin-based Dell personnel satisfying 3D's own superficial and broad test of relevance. If Dell's revelation of these employees surprised 3D, that was a surprise of 3D's own creation. The Court did not bar 3D from seeking discovery on the number of

4

Austin-based members of the Client Solutions Group or anyone affiliated with Messrs. ▇▇▇▇▇.[1] 3D chose not to, opting to bury its head in the sand. 3D cannot do so and then complain of an ambush. On this dispute, the Court agrees with Dell in every respect.

3D disagrees, stating that a defendant must "proffer all evidence that supports their motion at the outset." ECF No. 73 at 4–5. Yet, as Dell notes, Dell has not proffered these sixty-three Dell employees to support its motion to transfer—it proffered them to address 3D's overbroad conception of relevance raised for the first time in 3D's opposition. Dell continues to maintain that these sixty-three Dell employees have no relevant knowledge. That distinguishes *Scramoge Technology Ltd., v. Google LLC*, in which the defendant identified for the first time in reply new witnesses that were, by the defendant's own standard, relevant. No. 6:21-cv-00616-ADA, ECF No. 72 at 4–5 (W.D. Tex. May 20, 2022). The Court will not, therefore, require a defendant to include in its motion to transfer *anybody* with a title or some superficial affiliation that a plaintiff could conceivably twist to palm off a weak claim of relevance or else waive invocation of such personnel forever.

### B. Venue and Jurisdiction in the Transferee Forum

To satisfy § 1404(a)'s preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). This Court finds, and the parties do not contest, that this Action could have been brought in the Austin Division.

---

[1] And, indeed, as Dell remarks, 3D was set to depose Messrs. ▇▇▇▇▇ but then declined to do so with little notice. ECF No. 68 at 3.

### C. Private Interest Factors

#### 1. Cost of Attendance for Willing Witnesses

The Fifth Circuit established the "100-mile rule," which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *14 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g., id.* at *12 ("[T]ime is a more important metric than distance."). Or to simply disregard any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance regardless of whether the court transfers the action or not. *See In re Apple Inc.*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be, "rigidly," applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google*, 2021 U.S. App. LEXIS 29137, at *12.

This factor slightly favors transfer.

a.  Potential Witnesses in the Austin Division

Dell contends that this factor favors transfer because relevant witnesses reside in the Austin Division—not this Division. *See* ECF No. 33 at 11–12. Dell alleges that the Austin Division covers approximately 14,000 Dell employees, ECF No. 33 at 8; ECF No. 33-2 at 2, and it specifically identifies eight with knowledge particularly relevant, in Dell's estimation, to the Accused Products. ECF No. 33 at 12–13; ECF No. 33-2 at 2–3. Dell provides a declaration from Bill Guerra, a Senior Director of Product Development Management, that lists those eight potential witnesses:

- Louis Bruno, a "Senior Principal Product Development Manager" responsible for the day-to-day engineering for graphics technologies in the Accused Products. ECF No. 33-1 ¶ 5.

- Ernie Gonzalez, an "Advisor, Product Management" responsible for marketing the features of those Accused Products that are affiliates with Alienware and gaming, "including as it relates to graphics technology." *Id.* ¶ 6.

- Ryan Gu, Director, Product Management. He oversees product planning for the Alienware and Gaming Accused Products, including as it relates to graphics technology. *Id.* ¶ 7.

- Bill Guerra, a "Senior Director of Product Development Management, specifically with respect to graphics and video ecosystem engineering at Dell Technologies." *Id.* ¶ 1. He purportedly leads Dell's engineering organization delivering "graphics and video technology to Dell's client products (such as desktop and laptop computers)." *Id.* ¶ 3.

- Ivan Guerra, a "Senior Principal Engineering Technologist," who helps develop "strategy for the graphics technologies" in some of the Accused Products. *Id.* ¶ 8.

- Michael Merwick, a "Director, Commodity Management," who "oversees strategic procurement related to graphics technology for the Accused Products." *Id.* ¶ 9.

- Alex Shows, a "Distinguished Engineer," who helps develop "performance strategy and assessment for several of the Accused Products, including as it relates to the graphics technology." *Id.* ¶ 10.

- Kyle Thornton, a "Consultant, Product Management," who "oversees product planning for the Latitude, Precision, Optiplex, and Rugged Accused Products, including as it relates to graphics technology." *Id.* ¶ 11.

3D contends that Dell fails to show that these potential witnesses have any knowledge relevant to "what is at issue in this case—i.e. graphics processing using DirectX versions 11 and higher." ECF No. 55 at 8. 3D notes that: (1) Bill Guerra conceded that Dell does not make the processors in the Accused Products that have GPUS supporting DirectX 11.1 and higher, ECF No. 55 at 8; ECF No. 33-1 ¶ 4; (2) Dell claims to not have any source code for the accused functionality, ECF No. 55 at 8; and (3) Dell has not produced documents about the "structure, function and operation of DirectX other than manuals that merely state the functionality is supported by the Accused Products," *id.* From this, 3D gathers that the eight witnesses Dell identifies lack knowledge concerning the accused functionality.

In reply, Dell attests that it "identified the potential witnesses with the most knowledge of the accused graphics capability," but retreats to the position that its witnesses will be relevant to claims of "indirect infringement and damages." ECF No. 60 at 4. Dell does not attempt to quantify how relevant these witnesses will be to direct infringement or invalidity. And it responds that if "knowledge of the specific accused feature—DirectX's alleged 'Real Time Tessellation'—were

the test of relevance," some of the Dell witnesses in this Division that 3D relies on are likewise irrelevant. *Id.*

To that point, 3D claims that this factor weighs against transfer because forty potential witnesses reside in this Division. ECF No. 55 at 6–10. 3D first specifically identifies ▇▇▇▇, who 3D contends is a "relevant marketing and sales witness that lives and works in" this Division. *Id.* at 3. 3D adduces evidence that ▇▇▇ advises on how to configure the relevant processors of the Accused Products, that ▇▇▇ manages and trains sales teams on how to sell the Accused Products, and that ▇▇▇ is a subject matter expert for "end-user Dell computer products" for mid-sized companies. *See id.* 3D argues that he has knowledge relevant to "infringement" and damages, citing specific *Georgia-Pacific* factors. *Id.* When being deposed in a co-pending case before the undersigned, ▇▇▇ testified that there are others in this Division with similar roles: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 4. 3D reasons that, for the same reasons ▇▇▇ is relevant, Messrs. ▇▇▇▇▇ are relevant. 3D also specifically identifies ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. ECF No. 55 at 4. He is purportedly responsible for selling 200,000 to 300,000 computers per year, some of which includes Accused Products. *Id.*

According to 3D, Messrs. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are all part of Dell's Client Solutions Group. And Dell's 30(b)(6) witness in the co-pending *VideoLabs* case against Dell[2] confirmed that the Client Solutions Group is relevant to the *VideoLabs* case. 3D surmises that, because this Action and the *VideoLabs* action involve Dell computers' graphics processing technology, the Client Solutions Group must likewise be relevant to this Action. ECF No. 55 at 4.

---

[2] *VideoLabs, Inc. v. Dell Techs. Inc. et al.*, No. 6:21-cv-00456-ADA-DTG (W.D. Tex. May 3, 2021).

It further reasons that, if the Client Solutions Group is relevant to this Action, then all employees in the Client Solutions Group have knowledge relevant to this Action—including twenty-five employees in the Waco Division. *Id.* at 4–5.

In reply, Dell presents declarations from Messrs. ▇▇▇▇▇▇ in which they attest that they have "no special knowledge on how the graphics components used in Dell products work." ECF No. 60-1 ¶ 23; ECF No. 60-2 ¶ 23. They further testify that they are not familiar with "Real Time Tessellation." ECF No. 60-1 ¶ 22; ECF No. 60-2 ¶ 25. Moreover, Messrs. ▇▇▇▇▇▇ testify abouts rafts of named Dell personnel located in the Austin Division who are part of the Client Solutions Group or otherwise support or supervise Messrs. ▇▇▇▇▇▇. *See generally* ECF Nos. 60-1, 60-2. Dell argues that if the Court considers the Client Solutions Group witnesses in this Division, it must also consider these Austin-based witnesses. ECF No. 60 at 3.

Both sides' arguments have some merit. It is remarkable that both sides were unable to identify party personnel in this or the Austin Division with relevant and material knowledge of what appears to be the accused functionality—graphics processing using DirectX versions 11 and higher and implementation of Real Time Tessellation. Dell has nevertheless persuaded this Court that the Dell engineers and product developers with the most knowledge about the accused processors and their implementation in the Accused Products are those Mr. Guerra identified: Mr. Guerra himself and Messrs. Bruno, Gu, Ivan Guerra, and Shows. As Dell suggests, these potential witnesses may have knowledge relevant to at least indirect infringement and specifically Dell's knowledge and intent.

For everyone else, the Court is not persuaded that they possess any knowledge relevant to anything but damages—and even then, it is unclear how helpful their testimony would be to either sides' damages case. There are a lot of *Georgia-Pacific* factors; it is not difficult to characterize a

sales, marketing, or supply-chain employee—regardless of level—as having knowledge relevant to at least one factor. But, where such employees reside and work in both venues, the Court is hard-pressed to conclude that the convenience of one generic marketing employee in the Waco Division is weightier than the convenience of a generic marketing employee in the Austin Division. Messrs. ▆▆▆▆ are not low-level sales employees but they've admitted they have no knowledge of how the graphics components used in Dell products work and 3D hinges their relevance on deposition transcripts from an unrelated, co-pending case. This does not inspire much confidence in this Court that Messrs. ▆▆▆▆, and all the other witnesses that 3D ties to Messrs. ▆▆▆▆, have relevant knowledge. Moreover, it is unlikely they have unique knowledge relevant to damages not available from some Austin-based analog. The ▆▆▆▆ declarations identify such analogs. The same is true for the seven members of Dell's finance unit and four members from Dell's global marketing unit in this Division whom 3D *indiscriminately* plucked from a list of Dell employees in this Division that was collected blind to "whether that employee . . . has potentially relevant information or knowledge." ECF No. 55 at 5–6 (citing ECF No. 55-1 at 4–5; ECF No. 55-2). 3D did not make a persuasive showing that these employees—or the marketing or client solutions personnel—have relevant knowledge. And even if these witnesses had such knowledge, the Court is not convinced there are not an equal amount of witnesses with the same or similar knowledge at Dell's headquarters in the Austin Division.

Accordingly, only the Austin-based engineers and product developers identified above have substantive knowledge relevant to this Action for which no analog in the other division has been identified.[3]

---

[3] According to Dell, 3D's 30(b)(6) designee was unable to confirm with certainty that 3D lacks ties to the Austin Division. Dell argues that this supports transfer to Austin. ECF No. 60 at 4 (citing

b. Out-of-State Witnesses

Dell argues that this factor favors transfer when considering out of state witnesses. ECF No. 33 at 15. Dell contends that it is easier to travel to Austin than it is to Waco because Austin has a major airport. *Id.* Dell failed to identify any willing, out-of-state witnesses so the Court need not consider this argument.

c. Conclusion

Having credited the convenience of Austin-based engineers and product developers Mr. Guerra identified, the Court finds that this factor favors transfer. But only slightly so given: (1) these witnesses, who have little no to knowledge of the specific accused functionality, almost certainly cannot testify to core issues like direct infringement and invalidity; and (2) the mild inconvenience traveling from Waco to Austin represents.

2. Compulsory process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *14 (W.D. Tex. Sep. 10, 2019) (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more

---

*In re Radmax*, 720 F.3d at 288–89). The Court disagrees. 3D does not bear the burden here—Dell does. As such, it is not 3D's burden to prove it has no ties to Austin.

third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *8 (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

Dell identifies several potential witnesses from Advanced Micro Devices, Inc. ("AMD"), one of the two Dell component-suppliers 3D referenced in its complaint. AMD maintains offices in Austin and Dell identifies several AMD personnel by name and title, suggesting they have relevant knowledge but also representing that it is not clear whether they would be willing to testify. ECF No. 33 at 10. As 3D notes, "when there is no indication that a non-party witness is willing, the witness is presumed unwilling." *In re Pandora Media*, 2021 WL 4772805, at *3 (quoting *In re Apple, Inc.*, 581 F. App'x 866, 889 (Fed. Cir. 2014)). As such, these AMD witnesses fall under this factor. And it is difficult for the Court to conceive of a situation in which a court in the Austin Division would have the power to compel a witness under Federal Rule of Civil

13

Procedure 45(c)(1)(A)–(B) but this Court would not, and vice-versa. Accordingly, this Court agrees with the parties that this factor is neutral. ECF No. 33 at 7; ECF No. 55 at 2.

### 3. Ease of access to sources of proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *5. This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper*, 14 F.4th at 1321 ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute); *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has held, however, that it is error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021); *see also Def. Distributed*, 30 F.4th at

14

434 & n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google*, 2022 WL 1613192, at *4.

This factor favors transfer. Dell argues that its evidence "is located at, or accessible from, its headquarters in Round Rock and/or ancillary offices in Austin." ECF No. 33 at 6. 3D concedes that "Defendants' witnesses access much of their information through the cloud." ECF No. 55 at 10. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. ECF No. 34 ¶ 6. This is not definitive proof that evidence resides ▅ ▅ in Austin. But it is certainly much more likely that relevant documents are stored ▅▅ in the Austin Division than this Division. Moreover, it is error to disregard: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google*, 2021 U.S. App. LEXIS 33789, at *7. Given the credit the Court accords to the engineers and product managers in Austin/Round Rock, recounted above, this Court also gives weight to their location under this factor. And given AMD's status as Dell's supplier, the Court further gives weight to documents that AMD personnel, referenced above, create and maintain in Austin.[4]

The Court is, therefore, convinced that relevant sources of proof are accessed with greater ease in the Austin Division. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅; its employees access their relevant documents from the cloud; *and* relevant custodians create and maintain documents

---

[4] For evidence residing in this Division, 3D entirely relies on documents ▅▅▅▅ maintains on his Dell-issued laptop. ECF No. 55 at 10. Yet, for the reasons the Court neutralized ▅▅▅▅ convenience, above, it also neutralizes any weight owed to documents ▅▅▅▅ may maintain in this Division.

15

from the Austin Division. Moreover, relevant AMD personnel likely have greater access their documents in the Austin Division, where they maintain and create them.

### 4. Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

This factor is neutral. This Action has not yet matured to the point where this factor would weigh against transfer—the Court has not even reached the *Markman* hearing. And there are no

substantially similar co-pending cases in this Court or in the Austin Division that would knock this factor off balance. Accordingly, this factor is neutral.

### D. Public Interest Factors

#### 1. Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Dell argues that this factor is neutral. EFC No. 33 at 16. 3D argues that this factor should weigh against transfer because of time to trial statistics. EFC No. 55 at 17. 3D cites docket navigator statistics from 2008–2022 indicating that trial in the Waco Division would be reached 200 days faster than in the Austin Division. *Id.* This factor, therefore, weighs against transfer. That said, this is the most speculative factor, *In re Genentech*, 566 F.3d at 1347, and the Federal Circuit has accorded it strikingly little weight in recent history.

#### 2. Local Interest

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in

original). The Federal Circuit has accorded significant weight under this factor to the location where the accused product or functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345. It has accorded no weight to the location of the sale of an accused product where that product is offered nationwide. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Courts should not heavily weigh a party's general presence in the forum. *In re Apple*, 979 F.3d at 1345. For example, the Federal Circuit recently attributed error to this Court for granting even *some* weight to Apple's significant general presence in this District. *In re Apple*, 2022 U.S. App. LEXIS 14398, at *7 ("The court's reliance on [the defendant's Austin] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion.").

"Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed*, 30 F.4th at 435. Yet the Federal Circuit has instructed that plaintiff's residence in the transferor forum is owed no weight if it is "recent and ephemeral." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). The Federal Circuit has also clarified that a plaintiff's residence is owed zero weight if it lies beyond the transferor judicial district, even if just so. *See In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) (granting little to no weight to the design, development, and testing of the claimed invention occurring just over 100 miles from the transferor court); *In re Google*, 2021 WL 4592280, at *6 (finding error with district court's reliance on plaintiff's office in Texas, where the office was located outside this District).

This factor slightly favors Austin. The Court begins with those events giving rise to this Action. The parties effectively concede that the design, development, and testing of the accused functionality occurred outside of the transferor and transferee divisions. That makes it difficult for

18

the Court to locate the events giving rise to this Action in Austin. Though, consistent with this Court crediting the convenience of Austin-based engineers and product developers, it may be said that 3D's indirect infringement claims may arise from their Austin-based conduct.

Next, the Court sets aside Dell's general presence. Dell has a greater general presence in the Austin Division than it has in this Division but this Court would clearly abuse its discretion in according *any* weight to general presence. *See In re Apple*, 2022 WL 1676400, at *2 ("The court's reliance on [in-district] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion."). *But see In re Apple*, 979 F.3d at 1352 (Fed. Cir. 2020) (Moore, C.J., dissenting) ("Neither this court nor the Fifth Circuit has held that an accused infringer's general presence in a district is irrelevant to the district's local interest in resolving the case." (citing *In re Acer*, 626 F.3d at 1255–56)).

Finally, the Fifth Circuit has endorsed the location of witnesses as an important consideration under this factor. *See Def. Distributed*, 30 F.4th at 435. Consistent with the discussions above, the Court accords weight to Austin-based potential witnesses like Dell engineering and product development witnesses and potential AMD witnesses Dell specifically identified.

In sum, the Court finds that this factor slightly favors transfer. Dell has not made an overwhelming showing that the events giving rise to this Action occurred in the Austin Division but more witnesses with unique knowledge reside in the Austin Division. Their impact is slight, however, given their testimony is unlikely to shed light on core issues like direct infringement and invalidity.

### 3. Familiarity of the Forum with governing Law-At-Issue

The parties do not dispute that this factor is neutral, and the Court agrees.

    4.        <u>Conflict of Laws</u>

The parties do not dispute that this factor is neutral, and the Court agrees.

## IV. CONCLUSION

The willing-witnesses factor, the sources-of-proof factor, and the local-interest factor all weigh slightly in favor of transfer. Court congestion weighs slightly against. This is not the strongest case for transfer ever made. But it is clear from the record that more witnesses with unique technical knowledge work and reside in the Austin Division. They create and maintain documents there. 3D's attempt at showing any commensurately relevant or unique witnesses and evidence in this Division fails. The Court, finds, therefore, that the Austin Division is clearly more convenient than this Division—but only just.

**IT IS THEREFORE ORDERED** that 3D's Motion to Strike, ECF No. 64, is **DENIED.**

**IT IS FURTHER ORDERED** that Dell's Motion to Transfer, ECF No. 33, is therefore **GRANTED**. The Court's Clerk is directed to transfer the above-captioned matter to the Austin Division of this District.

SIGNED this 19th day of August, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE